St. Maries vs. Polleys and another.

## St. Maries vs. Polleys and another.

COURT AND JURY. *(1) Credit due testimony, for the jury.*
PROMISSORY NOTE: SURETY: EXTENSION OF TIME. *(2) When surety discharged by agreement to extend time. (3) Parol proof of usurious agreement to extend time. (4) When agreement to pay usury no consideration.*
REVERSAL OF JUDGMENT: *(5) For rejection of evidence.*

1. The question of the credit due testimony is for the jury; and where a witness has distinctly testified to facts which would sustain the verdict, a judgment on the verdict will not be reversed on the ground that such testimony was contradicted by that of several other witnesses.
2. One who has signed a note as surety, will not be discharged by an *invalid* agreement to extend the time of payment to his principal; nor by a valid agreement made by a holder without notice that he is a surety.
3. An usurious agreement for extension of time of payment may be shown by parol, in a proper case.
4. Where one issue was, whether time of payment had been extended on the note in suit, the jury were instructed that an agreement to pay a bonus or interest in excess of ten per cent., being illegal, would not constitute a sufficient consideration. *Held*, that this must be understood of a mere *executory* agreement, and was correct. *Meiswinkle v. Jung*, 30 Wis., 361.
5. The rejection of proper evidence is not ground of reversal, where the witness was afterwards permitted to testify fully upon the subject.

St. Maries vs. Polleys and another.

APPEAL from the Circuit Court for *La Crosse* County.

Action on two promissory notes, for $1,073 and $1,500 respectively, both dated December 5, 1871, and payable eight months after date, in gold, with interest in gold at ten per cent. per annum. The complaint alleges demand at maturity and on subsequent occasions; and that at the maturity of the note gold was worth a premium of about fifteen per cent., while at the commencement of the action the premium was only one per cent. Judgment is demanded for $2,733.95, with interest at ten per cent. from the date of the notes. The defendant *Polleys* answered, admitting the execution of the notes, but denying that they were then due and payable, or that either of the defendants was indebted upon them except as afterwards stated in the answer. "By way of counterclaim and defense," the answer then alleges that on the day when said notes were payable by their terms, defendant tendered to plaintiff the full amount of money due upon them; that plaintiff declined to receive the same, stating that he had no use for any part of the money and contracted to reloan the money to defendant for one year in consideration that defendant would pay plaintiff the same rate of interest named in the notes, and would employ him for the then ensuing year "at the wages and sum of $700;" that the time of payment of said notes was thus extended from August 8, 1872, to August 8, 1873; that about the time the notes became due, defendant, at plaintiff's request and as a consideration of the extension of time of payment of said notes, entered into an agreement with the plaintiff, which was indorsed upon each of the notes, whereby defendant agreed to pay interest upon the interest upon said notes after such interest became due; and that defendant "did employ plaintiff one year from August 8, 1872, at the wages of $700 per year, and paid him in full for said services, as agreed for the consideration aforesaid." It is further alleged that said notes were given for a loan of money from plaintiff to defendant; and that the defendant *Weston* was a surety on each of said notes, and re-

ceived no part of the consideration for which the same were given, as was well known to plaintiff before the loaning of the money or the delivery of the notes. It is further alleged, in substance, that on the 8th of August, 1873, plaintiff proposed to reloan the money then due to defendant for three years from that date, upon defendant's employing plaintiff during that time at the rate of $600 per year, and paying him $50 per year *bonus;* that defendant assented to the proposition, and the time for payment of said notes was thereby extended for said term of three years, and defendant employed said plaintiff and paid him under said agreement $150 for such extension of time; and that the defendant *Weston* had no notice or knowledge of such extension of time and never assented thereto. It is further alleged that, on the 8th of August, 1876, plaintiff and said defendant *Polleys* had a settlement of some other dealings between them; that at that time plaintiff proposed to loan to said defendant the money then due upon said notes, for one year from that date, and release the defendant *Weston* from all liability upon said notes, on condition that defendant should continue plaintiff in his employ at the same wages as during the three previous years, and pay him $25 upon each of said notes, and give him certain mortgage securities; that defendant assented to said proposition, and in pursuance of said agreement paid plaintiff $50 in money, employed him as agreed, and as soon thereafter as practicable, to wit, September 16, 1876, executed and delivered to him the mortgage securities aforesaid; that the time of payment of said notes was thereby extended for one year from August 8, 1876, and *Weston* was discharged from all liability upon said notes; and that *Weston* had no notice of the last mentioned contract, and took no part therein. There are similar averments of a further extension of time from August 8, 1877, to August 8, 1878, upon an executed consideration, and without the knowledge or assent of *Weston.* Upon these averments, the answer prays that said last mentioned contract for the extension of payment to August 8,

1878, may be specifically enforced; that the payments made by said defendant to plaintiff on the notes be credited to defendant thereon; that plaintiff be perpetually enjoined from prosecuting this or any action upon said notes until after August 8, 1878; that the defendant *Weston* be discharged from all liability upon the notes; and that said contract for his release be specifically enforced, etc.

The defendant *Weston* answered separately, setting up substantially the same facts as are alleged in the foregoing answer.

The alleged errors in the rulings of the court upon evidence and in its instructions to the jury, will sufficiently appear from the opinion.

Plaintiff had a verdict against both defendants for $4,000.93; a new trial was denied; and from a judgment on the verdict, both defendants appealed.

For the appellants, there was a brief by *M. P. Wing* and *G. C. Prentiss*, their attorneys, with *Cameron, Losey & Bunn*, of counsel for *Weston*, and oral argument by *Chas. W. Bunn*. They contended, among other things, 1. That parol proof was admissible to show that *Weston* was merely a surety. *Riley v. Gregg*, 16 Wis., 671; *Austin v. Boyd*, 24 Pick., 64; *Harris v. Brooks*, 21 id., 195; *Carpenter v. King*, 9 Met., 511; 2 Am. L. C., 279, 289–303; *McGee v. Prouty*, 9 Met., 547; *Horne v. Bodwell*, 5 Gray, 457; *Grafton Bank v. Kent*, 4 N. H., 221; *Grafton Bank v. Woodward*, 5 id., 99; *Wheat v. Kendall*, 6 id., 504; *Davies v. Barrington*, 30 id., 517; *Lime Rock Bank v. Mallet*, 42 Me., 349; *S. C.*, 34 Me., 547; *Mariner's Bank v. Abbott*, 28 id., 280; *Wilson's Adm'r v. Green*, 25 Vt., 450; *Bank of St. Albans v. Smith*, 30 id., 148; *Artcher v. Douglass*, 5 Denio, 511; 18 Pa. St., 207; *Apgar v. Hiler*, 24 N. J. Law, 812; *Bank of Steubenville v. Leavitt*, 5 Hammond, 207; *Bank of Steubenville v. Hoge*, 6 id., 17; *Core v. Wilson*, 40 Ind., 204; *Brown v. Haggerty*, 26 Ill., 469; *Ward v. Stout*, 32 id., 399, 410; *Piper v. Newcomer*, 25 Iowa, 221; *Garrett v. Ferguson*, 9 Mo., 125; *Coats v.*

*Swindle*, 55 id., 31; *Rose v. Williams*, 5 Kans., 483; *Higdon v. Bailey*, 26 Ga., 426; *Branch Bank v. James*, 9 Ala., 949; *Davis v. Mikell*, 1 Freeman Ch. (Miss.), 548; *Roberts v. Jenkins*, 19 La., 453; *Bell v. Banks*, 3 Scott's N. R., 503; *Stone v. Compton*, 5 Bing., N. C., 142; *Petty v. Cooke*, L. R., 6 Q. B., 790; *Oriental Co. v. Overend*, L. R., 7 Ch. App., 142, affirmed in House of Lords, 31 Law Times, N. S., 322; *Oakeley v. Pasheller*, 4 Cl. & Fin., 207; *Wilson v. Lloyd*, L. R., 16 Eq. Cas., 60; *Pooley v. Harrandine*, 7 El. & Bl., 433; *Greenough v. McClelland*, 2 El. & El., 424; Brandt on Suretyship, §§ 17, 18. 2. That where time has been given to the principal without consent of the surety, the mere presumptive injury to the latter is sufficient to discharge him, and no proof of actual injury is required. *Rees v. Berrington*, 2 Ves. Jr., 540, and cases cited in notes to 2 Am. L. C. (3d ed.), at p. 312. 3. That the court erred in holding that the evidence offered on that subject did not tend to show a valid extension of time on the note. The record presents for decision the question whether an agreement by the creditor to extend time of payment to the principal for a sum of money in excess of the highest legal rate, which sum is actually paid and retained by the creditor for such extension until under the statute it cannot be recovered back or offset, will release the surety. In *Riley v. Gregg*, 16 Wis., 666, it was held that usurious agreements are void only at the option of the borrower and those in privity with him; and that the lender is precluded, upon general principles of public policy, from setting up the usury to defeat any rights which the other party, or those in legal privity with him, may claim by virtue of the contract. In *Meiswinkle v. Jung*, 30 Wis., 361, it was merely decided that the usurious agreement, so long as it remained *executory* as to both parties, was void as to both. See the note of Chief Justice Dixon to *Riley v. Gregg*, 16 Wis., 672, in V. & B.'s ed. Both the above cases were decided under ch. 160, Laws of 1859. Sec. 4 of that act provided that where any greater rate than

ten per cent. was reserved, the whole contract was *void;* and sec. 8 declared that, on the fact appearing that any contract had been made in violation of the act, the court should declare it *void.* Ch. 93 of 1871 repeals these provisions, and enacts that usurious agreements shall be *valid* and effectual to secure the repayment of the principal sum loaned, but that no interest shall be recovered on such securities, or on the money loaned. Whatever criticism may be made on the language used in *Riley v. Gregg,* under the act of 1859 *(Austin v. Burgess,* 36 Wis., 192), it certainly lays down good law under the act of 1871. In this case the usurious consideration was paid, and the time for recovery of the same by the person paying it had passed before the commencement of this action; and the case is ruled by *Riley v. Gregg.* Moreover, the weight of reason and authority is in support of that decision. 1 Parsons on N. & B., 240. The contrary doctrine seems to rest on *Vilas v. Jones,* 1 Coms., 286. That was decided on the ground that the New York statutes made all usurious contracts *void.* See *Vilas v. Jones,* 10 Paige, 79; *Miller v. McCan,* 7 id., 451; *Billington v. Wagner,* 33 N. Y., 31; *La Farge v. Herter,* 5 Seld., 241; *S. C.,* 4 Barb., 346. The two latter cases are irreconcilable with *Vilas v. Jones.* In both an extension had been given to the principal on a usurious consideration in fact *paid,* and the creditor, before the extended time expired, brought an action against both principal and surety, and the court, relying on *Miller v. Kerr,* 1 Bailey, 4, held that the extension was valid as against the creditor, and that he could not sue before it expired. *Church v. Maloy,* 70 N. Y., 63, is distinguishable from this on two grounds: first, that the New York statute (as we suppose) makes a usurious contract *void;* second, that the suit was brought before the expiration of the time limited for recovering back the usury. As directly sustaining *Riley v. Gregg,* see *Kenningham v. Bedford,* 1 B. Mon., 325; *Duncan v. Reed,* 8 id., 382; *Kyle v. Bostick,* 10 Ala., 589; *Austin v. Dorwin,* 21 Vt., 38. See also Brandt on Suretyship,

§ 309, citing further, *Turrill v. Boynton*, 23 Vt., 142; *Scott v. Saffold*, 37 Ga., 384; *Cox v. Railroad Company*, 44 Ala., 611; *Scott v. Harris*, 76 N. C., 205; *Armistead v. Ward*, 2 Patton, Jr., and H., 504. And to the point that a usurious agreement to extend discharges the surety where the law does not pronounce the usurious contract void, but merely subjects the lender to certain penalties, see *McComb v. Kittridge*, 14 Ohio, 351; *Harbert v. Dumont*, 3 Ind., 348; *Cross v. Wood*, 30 id., 378; *White v. Whitney*, 51 id., 124; *Redman v. Deputy*, 26 id., 338; *Calvin v. Wiggam*, 27 id., 489; *Montague v. Mitchell*, 28 Ill., 481; *Kennedy v. Evans*, 31 id., 258; *Wittmer v. Ellison*, 72 id., 302; *Danforth v. Semple*, 73 id., 172; *Myers v. Bank of Fairbury*, 78 id., 258; *Kelley v. Gillaspie*, 12 Iowa, 57. In *Burgess v. Dewey*, 33 Vt., 618, and some other cases, it is held that the payment of the usury must be made *within the time of the extension*, to make the consideration good. The evidence in this case shows that the bonus of $150 for an extension for three years from August 8, 1873, was paid July 4, 1876, or more than thirty days before the extension expired. An extension for a very brief time, as for one day, has the same effect as one for a long time. *Fellows v. Prentiss*, 3 Denio, 512.

For the respondent, there were briefs by *Howe & Tourtellotte*, his attorneys, with *J. M. Morrow*, of counsel, and oral argument by *Wm. E. Howe*. They contended, among other things, 1. That, as *Weston* appears on the face of the notes as joint maker, he could not show by oral evidence that he was a mere surety, as that would be an attempt to vary by parol the terms of the written contract. *Charles v. Denis*, 42 Wis., 56; *Eaton v. McMahon*, id., 484; *Harris v. Newell*, id., 687; *Prescott Bank v. Caverley*, 7 Gray, 217; *Wright v. Morse*, 9 id., 337; *Brown v. Butler*, 99 Mass., 179–80; *Way v. Butterworth*, 108 id., 509, 513; *Allen v. Brown*, 124 id., 77; *Bull v. Allen*, 19 Conn., 101; *Campbell v. Tate*, 7 Lans., 370; *Brown v. Curtiss*, 2 N. Y., 225; *Hendrickson v. Hutchinson*,

5 Dutch., 180; *Stroop v. McKenzie*, 38 Tex., 132; *Shriver v. Lovejoy*, 32 Cal., 574; *Sprigg v. Bank of Mt. Pleasant*, 10 Pet., 265; *Ball v. Gilson*, 7 Up. Canada, C. P., 531; *Strong v. Foster*, 84 E. C. L., 201; *Manley v. Boycot*, 2 El. & Bl., 46; 1 Parsons on N. & B., 233; 2 Daniel on Neg. Inst., §§ 1335–8, and notes; Story on Bills, §§ 253, 425, 432, 435; Byles on Bills, 3d Am. ed., *192. 2. That the surety is not discharged by an extension of time to the principal where it does not appear that he was injured by such extension, or at least where the evidence shows affirmatively, as here, that he was not injured. *Gardner v. Van Norstrand*, 13 Wis., 543; *Barber v. Kilbourn*, 16 id., 485, 489–90. 3. That the agreement to extend for three years, of which evidence was offered and rejected, was an *executory* agreement, and that that part of the charge upon the subject of such agreements, which was excepted to, related clearly to executory agreements, and was correct. *Meiswinkle v. Jung*, 30 Wis., 361; *Vilas v. Jones*, 1 N. Y., 286 and 288; *Church v. Maloy*, 70 id., 63; *Abel v. Alexander*, 45 Ind., 523 (15 Am. Rep., 270, 275, 277); *Ives v. Bosley*, 35 Md., 262 (8 Am. R., 411, 415, 416); *Burgess v. Dewey*, 33 Vt., 618; *Howell v. Sevier*, 4 Leg. Rep. (Tenn.), 195; *S. C.*, 7 Cent. L. J., 475; *Shaw v. Binkard*, 10 Ind., 227, per HANNA, J.; Brandt on S. & G., §§ 309, 310, and cases there cited. From August 8, 1873, to July 4, 1876, the alleged contract of extension was wholly executory, and, being forbidden by law, could not have been enforced by either party. During the last thirty days of the three years, after the payment of the money, matters were in effect wholly unchanged; for the $150 paid as *bonus* could have been recovered back at any time during that thirty days. There was therefore not a single moment during all of the three years, when plaintiff could have been compelled to delay the recovery of his money by suit, or when *Weston*, if a surety, could not have resorted to his remedies as such. *Harris v. Newell*, 42 Wis., 691; *Meiswinkle v. Jung* and *Shaw v. Binkard, supra; Goodhue v. Palmer*, 13 Ind., 457; *Jenness v. Cutler*, 12 Kans., 500.

St. Maries vs. Polleys and another.

COLE, J. It is doubtful whether some of the questions which were so fully and ably discussed by counsel on the argument, are fairly presented by this record. For instance, whether or not parol proof was admissible to show that *Weston* signed the notes in suit as surety, is out of the case, for the reason that the answers alleged that he executed the notes as surety, and testimony was given on the trial, without objection, to show his relation to the notes. That question may therefore be dismissed without further comment.

We are unable to agree with the learned counsel for the defendants in the position that there is no evidence in the case worthy of credit, to support the verdict. To our minds there is sufficient evidence to sustain it, even as against the defendant *Weston*. In saying this, we do not mean that there is what is called in the books a mere *scintilla* of evidence in favor of the conclusion reached by the jury, but that there was evidence upon which a jury might proceed to find as they did, within the reasonable rule laid down on this subject in *Toomey v. L., B. & S. C. Railway Co.*, 3 C. B., N. S., 150; *Jewell v. Parr*, 13 C. B., 909; *Improvement Co. v. Munson*, 14 Wall., 448. If the jury were satisfied that the plaintiff told the truth in regard to the transactions about which he testified, they might well have concluded, either that *Weston* was not a surety, but one of the principal makers of the notes, or, if he was a surety, that the plaintiff had no notice of that fact when the notes were executed and delivered; or, finding that *Weston* was a surety, and known to be such by the plaintiff when the notes were given, then that there was no valid agreement shown to extend the time of payment, so as to exonerate him from liability. The jury might have been satisfied that either one of the above states of facts was clearly established, and consequently found as they did. It is true that there was testimony which directly and positively, in some material points, contradicted this testimony of the plaintiff. But the credibility and weight of the testimony was a matter exclusively for the jury,

and we cannot disturb the verdict because we think they reached a wrong conclusion upon it. We have no right to say the jury erred in believing the statements of the plaintiff rather than the opposing statements. It is enough that there was evidence from which the jury might reasonably and properly have found that either one of the above propositions of fact was true.

It is further insisted that the court below erred in excluding the evidence offered to prove that the premium on gold advanced between the making of the notes and the time they fell due. It is said that the proposed testimony had a tendency to discredit the statements of the plaintiff in regard to conversations which he testified he had with *Polleys* when the notes became due in 1872, and therefore should have been admitted. We are unable to see that the proposed testimony could have any such effect or tendency. It seems to be entirely immaterial and irrelevant for any purpose. It was not limited to the time when the notes became due, which was the time the plaintiff said he told *Polleys* gold was falling, and he was losing on the premium.

In regard to the last defense set up in the answers, the court in effect charged that, if an agreement was entered into between the parties upon a sufficient consideration, whereby the time of payment upon the notes was extended to August 8, 1878, this would defeat the action as to both defendants. The jury were further told, that, if the proof showed that *Weston* was a surety merely, to the knowledge of the plaintiff, then any agreement for an extension of the time of payment made with the principal debtor upon a good consideration, and without the consent of the surety, would release the surety from all liability on the notes. As to what consideration was necessary to support an agreement to extend the time of payment, the court also charged that an agreement to pay a bonus or interest in excess of ten per cent., being illegal, would not constitute a sufficient consideration; but that an

St. Maries vs. Polleys and another.

agreement to pay interest upon interest .already accrued and due, or to pay it upon interest to become due, after the time it became due, not being illegal, would be a good consideration for an extension of the time of payment. And this brings us to the third ground assigned for reversing the judgment, which is the error in the ruling of the circuit court in rejecting certain evidence, and in charging the jury that an agreement to pay a bonus or interest in excess of ten per cent. per annum would be illegal and would not support an agreement to extend the time of payment.

As to the first point, it is necessary to observe that *Polleys* was examined on the trial, and had stated, in substance, that when the year came around in August, 1873, plaintiff reloaned the money to him for three years, upon the consideration of $150, and also that he was to give the plaintiff employment any time he wanted to work during that time. He was then asked this question: "At what rate?" This question was objected to, for the reason that the agreement was usurious and void, and because it was an attempt to vary the terms of a written contract by parol evidence. This objection was sustained. It is not clear whether the question referred to the wages to be paid plaintiff for his work, or to the rate of interest to be paid on the notes. Assuming, however, that it related to the latter, we suppose it too plain for argument that the defendant might prove by parol the usurious agreement, if one was made. Parties do not generally reduce their usurious contracts to writing, and unless the real agreement could be shown by parol, the statute would practically be evaded in all cases. It is said by plaintiff's counsel, that the proposed evidence was inadmissible under the allegations of the answer. But this is a mistake; for *Polleys*, in his answer, states that plaintiff proposed to loan him the money for three years from the eighth of August, 1873, upon condition that he would pay a bonus of $50 a year; that he accepted the proposition; that the time of payment was extended; and that he paid under

the agreement $150 for the extension. But we think the true answer to be given to this exception is, that the defendant could not have been prejudiced by the ruling, because the witness subsequently testified fully as to all the agreements set up in his answer to extend the time of payment, and the consideration for these extensions, especially about the one made in August, 1873. And he leaves the matter in much doubt, whether in fact any agreement to extend the time of payment was at that time entered into. He says that he paid the plaintiff $150 about the fourth of July, 1876; that he understood he was paying this as a bonus on the money which he agreed to pay each year; that previous to this time the plaintiff came to him and said he would not take money under that contract (evidently referring to the memorandum on the notes that, if interest was not paid annually, the interest was to draw interest, which memorandum *Polleys* says he wrote two or three months after the notes were given), because he, the plaintiff, had been told that it made the note worthless. *Polleys* replied it made no difference to him, and the plaintiff wanted it to be considered as a bonus instead of compound interest. The testimony of *Polleys*, as contained in the bill of exceptions, is vague and very unsatisfactory. He nowhere positively states that there was any such agreement made as is set out in his answer, and we are inclined to think none such was made. At all events, the error in excluding the question referred to above, in the first instance, was cured by the subsequent examination of the witness upon the same subject.

The point made upon the charge we deem untenable. The proposition contained in the charge is, that an executory usurious agreement to extend the time of payment, being illegal, was not a good consideration in law for any agreement whatever, and did not release the surety. Such was the decision of this court in *Meiswinkle v. Jung*, 30 Wis., 361, which we think lays down the correct rule on the subject. See also *Riley v. Gregg*, 16 Wis., 667, and note of C. J. Dixon at the end of the case.

This case was argued upon the assumption that the court held that an usurious agreement which had been executed by the payment of the usury, on the part of the borrower, would not support such an agreement to extend the time of payment; but it is very obvious that this is not the meaning of the charge. The court was speaking of *an agreement to pay and receive* more than legal interest. Whether the same rule would obtain in case of an executed agreement, is a question not passed upon in the charge, and not presented to this court for decision.

*By the Court.*—The judgment of the circuit court is affirmed.