BENNETT et al. v. ODNEAL.

No. 3589. Opinion Filed July 14, 1914.

Rehearing Denied December 1, 1914.

1. PRINCIPAL AND SURETY—Bills and Notes—Extension—Release of Surety. Where the maker and payee of a note extend the time of its payment by a valid agreement, for a consideration, so to do, without the knowledge or consent of a surety thereon, this will, ordinarily, release the surety from his obligation to pay the note; provided, the relation of surety is disclosed on the face of the note, or the payee has other notice of same at the time of taking the note.

2. HOMESTEAD—Mortgages—Validity. A wife has the right to join her husband in a mortgage of the homestead, to secure the payment of a note of the husband, where the consideration of the same came to him alone; and such a mortgage is valid and enforceable without any part of the consideration passing directly into the hands of the wife.

3. HUSBAND AND WIFE—Principal and Surety—Release by Extension of Payment. Where a husband and wife, for the purpose of securing a debt of the husband, join in the execution of a mortgage on the homestead the title to which is in the husband, the wife does not thereby become a surety of her husband so as to be entitled to all the rights and privileges of other sureties; and if her husband and the holder of the mortgage enter into a valid agreement for the extension of the time of payment of the debt, without the knowledge of the wife, such agreement will not destroy the validity of the mortgage.

4. SAME. Where the title of record to land was solely in the husband, but in fact the wife was the equitable owner of an undivided interest therein, and both executed a mortgage thereon to secure the debt of the husband, she is not entitled to assert, as against the mortgagee, the rights of a surety to the extent of her interest in the land, unless the mortgagee had notice of such interest when he extended the time of pay-

ment of the debt. The mere fact that she joined in the covenant of seisin in the mortgage does not charge the mortgagee with such notice

(Syllabus by Brewer, C)

*Error from District Court, Murray County;*

*S. H. Russell, Assigned Judge.*

Action by George W. Odneal against Charles M. Bennett and wife. Judgment for plaintiff, and defendants bring error. Affirmed.

*C. N. Allen* and *Walter E. Latimer,* for plaintiffs in error.

*Geo. M. Nicholson* and *Gray & McVay,* for defendant in error.

Opinion by BREWER, C. This is an ordinary suit on a promissory note and to foreclose a mortgage on real estate. The note is executed by Chas. M. Bennett alone; the mortgage by both him and Ella M. Bennett, his wife.

The defendants filed answer in the case; the substance of the matter relied upon for a defense being that when the note became due the payee accepted the accrued interest and extended the time of payment of the note, and did this upon two occasions; and that the wife Ella M. Bennett, who had joined in the execution of the mortgage, did not know of, nor consent to, the extensions; and that, therefore, the mortgage which she had signed, which was upon the homestead, was released and cannot be enforced. It was also alleged that, while title to the mortgaged lands was in the husband, yet the wife had furnished a portion of the purchase money with which the lands were bought, and therefore had an equitable interest in the same as owner, in addition to her homestead rights.

The court sustained the plaintiff's motion for a judgment on the pleadings, on the ground that the matters stated in the answers did not constitute a defense. Exceptions were taken to this ruling of the court, and the defendants bring the case here as plaintiffs in error.

Several reasons are urged in the plaintiffs in error's briefs for a reversal, and these are met by arguments from the defendant in error showing why the case was properly decided. Much argument is presented in both briefs relative to whether or not the extension of the time of payment was based on any consideration; but this argument and the point are not material in this suit, unless Mrs. Bennett occupies the status of a surety. In the event she should be held to be a surety, this would be an important and perhaps decisive question; for it has been very generally held by the courts that where the maker of a note, by a valid agreement with the payee for a sufficient consideration, extends the time of payment without the knowledge or consent of the surety, this releases the surety from his obligation to pay the note; provided the payee knew that such person was a surety, or same was disclosed by the instrument. *St. Maries v. Polleys et al.,* 47 Wis. 67, 1 N. W. 389; *Culbertson v. Wilcox,* 11 Wash. 522, 39 Pac. 954; *Roberts v. Bane,* 32 Tex. 385; *Kaighn v. Fuller,* 14 N. J. Eq. 419; *Wilson v. Foot,* 11 Metc. (Mass.) 285; *Morgan v. Thompson,* 60 Iowa, 280, 14 N. W. 306; *Mullendore et al. v. Wartz,* 75 Ind. 431, 39 Am. Rep. 155; *Stewart v. Parker,* 55 Ga. 656. But, as we view this case, the wife did not bear the relation to the payee of surety. She did not sign the note. She merely joined with her husband in the execution of the mortgage on the homestead which was to secure the payment of the husband's note. This exact question was before the Supreme Court of Kansas in *Jenness v. Cutler,* 12 Kan. 500, and was decided against the contentions of plaintiffs in error. In that case one clause of the syllabus is as follows:

"Where a husband and wife, for the purpose of securing a debt of the husband's, join in the execution of a mortgage to their homestead, the title to which being in the husband, the wife does not thereby become such a surety of her husband as to be entitled to all the rights and privileges of other sureties; and if her husband and the holder of the mortgage enter into a valid agreement for the extension of the time for the payment of said debt for one year, such agreement will not destroy the validity of the mortgage."

And upon the point Mr. Justice Valentine, of that court, makes the following observation:

"Now, under such a state of facts, was the wife a surety? We suppose she might be said in one sense to be the surety for her husband, but in a very remote and attenuated sense, and not at all in the sense in which the word is used in the law. We suppose it may also be said that the wife has in one sense an estate in the homestead occupied by herself and husband, although the title to the same may be in her husband; but still, if it is an estate, it is such an estate as has never been defined by law, an estate unknown to the common law, technically no estate at all. The whole estate in such a case is in fact wholly in the husband, with merely a restriction for the benefit of his family upon his power to alienate the same. It is true, the wife has an interest in the homestead, a present and existing interest, an interest that will be protected by the courts; but it is simply an interest growing out of the marriage relation, and has no other or different foundation than the marriage relation and occupancy. It requires no instrument in writing to create such an interest, nor does it require any instrument in writing to destroy it. A merely going upon the premises, and occupying the same as a homestead, will create the interest. The abandonment of the premises as a homestead will destroy the interest. And if the wife should die while occupying the premises as a homestead she would have nothing that would descend to her heirs, or go to her executors or administrators, and nothing that she could devise or bequeath. The whole estate would continue to belong to her husband, and after her death he could sell and convey the same by a deed executed by himself alone. As we have before said, the wife has a present and existing interest in the homestead, such as will be protected by the courts; but so she has in all the other property of her husband. Every husband is bound to support and maintain his wife, where she has not other means ample to support herself; and all his property, real and personal, not exempt from execution, is under continual pledge for such support. Even where she abandons him for just cause, any person may furnish her with necessaries and look to her husband's property for compensation. And in many cases she may sue him directly for the means of support. (Civil Code, secs. 649, 639.) The action in such a case is called an action for alimony. And in such action the court may restrain by injunction the disposition of the husband's property pending the litigation. (Code, sec. 644, and secs. 237 to 249.) Now, notwithstanding this

present and existing interest of the wife in all the property of the husband, still no one has ever yet supposed that the wife was such a surety for her husband that, if a creditor of her husband should by a valid agreement extend the time for the payment of her husband's debt, that the creditor would thereby release all her husband's property from the payment of such debt. Even in states where it is necessary for the wife to sign a mortgage of real estate not a homestead, in order to bar her interest in such real estate, no one has ever yet supposed' that by such signing she became such a surety for her husband that she was entitled to all the rights and privileges of other sureties. Indeed, it has never been held in any state that a wife could become a surety, entitled to all the rights and privileges of other sureties, unless she pledged some portion or all of her own separate property."

It may be added that the constitutional and statutory provisions relative to a homestead in force in Kansas were practically the same in substance as those in force here.

Plaintiffs in error cite *Hubbard v. Ogden,* 22 Kan. 363, asking the especial attention of the court to that opinion, evidently considering that it affects or modifies the case just quoted from; but it has no such effect. It is true in that case the court held that the wife was the surety of the husband, to the extent of her separate property, which was included in the mortgage securing the note; but it will be seen at a glance that this was a very different proposition from that decided in *Jenness v. Cutler, supra,* the doctrine of which case seems to be supported by abundant authority. *Omlie v. O'Toole et al.,* 16 N. D. 126, 112 N. W. 677; *Robberts v. Roberts,* 10 N. D. 531, 88 N. W. 289; *Smith v. Schenck,* 60 Miss. 491; *Mahon v. Cooley,* 36 Iowa, 479; *Tennison v. Tennison,* 114 Ind. 424, 16 N. E. 818; *Bank v. Blythe & Milner,* 21 Ky. Law, 1033.

A wife has the right to join with her husband in a mortgage of the homestead to secure a note of the husband, where the consideration of the same came to him alone; and such a mortgage is valid and enforceable without any consideration moving directly to the wife. This is the holding of the Territorial Supreme Court in *Bastin v. Schafer et al.,* 15 Okla. 607, 85 Pac. 349.

The point raised, based upon the allegation in the answer that the wife had an equitable interest in the mortgaged property in addition to her homestead rights, has no merit. The matter pleaded did not state a defense. It is not averred that the plaintiff knew of her equitable interest, or- that he had constructive notice of same through a writing of record. *Creighton v. Crane et al.,* 73 Neb. 650, 103 N. W. 284; *Von Hemert v. Taylor,* 73 Minn. 339, 76 N. W. 42.

In the last cited case it is said:

"Where the title of record to land was solely in the husband, but in fact the wife was the equitable owner of an undivided interest therein, and both execute a mortgage thereon to secure the debt of the husband, she is not entitled to assert, as against the mortgagee, the rights of a surety to the extent of her interest in the land, unless the mortgagee had notice of such interest when he extended the time of payment of the debt. The mere fact that she joined in the covenant of seisin in the mortgage does not charge the mortgagee with such notice."

We find no substantial error in the record, and therefore the judgment should, in all things, be affirmed.

By the Court: It is so ordered.